# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MICROSOFT CORPORATION,

Plaintiff

-v-

JOHN DOES 1-10 d/b/a Testinside,
testinside.com, testinside.org, testinside.us,
testinside.net, testinside.co.uk,
testinside.ws, pass4side.com,
pass4side.net, certinside.com,
certinside.org, certinside.net,
exam4cert.com, exam4cert.biz,
exam4cert.net, and exam4cert.org

Defendants.

CIVIL ACTION NO.

February __, 2010

_____

## COMPLAINT

Plaintiff, MICROSOFT CORPORATION ("Microsoft"), by and through its undersigned attorneys, and for its Complaint for injunctive and other relief against defendants, JOHN DOES 1-10 d/b/a "Testinside," testinside.com, testinside.org, testinside.us, testinside.net, testinside.co.uk, testinside.ws, pass4side.com, pass4side.net, certinside.com, certinside.org, certinside.net, exam4cert.com, exam4cert.biz, exam4cert.net, and exam4cert.org (collectively, "Defendants"), hereby states and alleges the following:

## Nature of Action

1.      This action seeks recovery for violations of the Copyright Act, 17 U.S.C. § 101, *et seq.*, and the Lanham Act, 15 U.S.C. §§ 1114, 1125.  All claims herein arise out

of Defendants' unlawful copying and distribution of copyrighted material appearing on Microsoft's Certification Exams, and Defendants' misrepresentations of the true nature, source and derivation of their products.  Plaintiff seeks permanent injunctive relief to enjoin Defendants from their ongoing violations, and an Order that the offending domain name be impounded and/or transferred to Microsoft, as well as monetary damages.

**Parties, Jurisdiction and Venue**

2.      Plaintiff Microsoft Corporation ("Microsoft") is a Washington corporation with its principal place of business in Redmond, Washington.  Microsoft maintains offices in, among other places, Farmington, Connecticut.

3.      Defendants utilize various individual, corporate, and domain names and contact information with respect to their unlawful enterprise, including addresses known to be false.  Defendants' true identities are unknown.  Defendants operate, among other places, on the internet via the following domain names and associated websites.

a)      **"Testinside" Websites**.  Upon information and belief, Defendants operate websites at the following domain names: testinside.com, testinside.org, testinside.us, testinside.net, testinside.co.uk, and testinside.ws (the "Testinside Websites").  Indeed, Defendants admit common ownership of the Testinside Websites on www.testinside.com. (*See* Appendix at Exhibit 1 (including screen shot of same).)

Defendants have used varying and fictitious information in registering these domain names, sometimes identifying the registrant as "Jack Lee," sometimes "Liang Dang," and sometimes "Jun Yan." Originally, Defendants registered the Testinside Websites with a patently fictitious address – "no.101 strange street, Minneapolis, MN  55437."  As

the Court can take judicial notice, there is no "101 Strange Street" in Minneapolis, Minnesota. (*See* Appendix at Exhibit 2 (screen shot from U.S. Postal Service website indicating false address).) After Microsoft alerted Defendants' registrar to the false nature of that address, Defendants substituted a Shanghai address with respect to several of the Testinside Websites. However, Defendants still use the false "101 Strange Street" address for testinside.us. Moreover, subsequent to Microsoft's service of a demand letter on Testinside, Defendants have apparently attempted to conceal their identity and location, by implementing a WHOIS privacy feature through a company known as "Protected Domain Services," which Defendants have designated to accept and relay all correspondence. (*See* Appendix at Exhibit 3 (WHOIS results regarding Defendants' Websites and chart summarizing same).)

Defendants use common email addresses with respect to all of the Testinside Websites, including test-inside@hotmail.com, sales@testinside.com, support@testinside.com, and paypal@testinside.com. Indeed, Defendants have corresponded with counsel for Microsoft via email, but refused (despite request) to provide accurate mailing information or physical location. Indeed, subsequent to Microsoft's request for address information, Defendants began using the aforementioned WHOIS privacy service with respect to several of the Testinside Websites.

b)      **"Pass4side" Websites**. Upon information and belief, Defendants also operate websites at the following domain names: pass4side.com and pass4side.net (the "Pass4side Websites").  As a preliminary matter, on testinside.co.uk, Defendants have identified their family of websites under the category "Important Links."  (*See* Appendix at Exhibit 4 (including a recent screen shot of http://testinside.co.uk/, identifying pass4side, certinside and testinside).)  Moreover, on the Pass4side Websites, Defendants have expressly referred to themselves as Testinside and Testinside.com.  (*See* Appendix at Exhibit 4 (including recent screen shot of the "About Us" page on ***pass4side.com***, which is written: "About Testinside.   TestInside.Com offers incredible career enhancing opportunities… [O]ur certification practice exam study guides contain the most accurate and up to date certificaiton [*sic*] training practice exam material which makes TestInside.Com the #1 exam provider in the world.  We at TestInside are proud to provide you with the opportunity to achieve your career dreams and goals…").)  The Pass4side Websites have also used the Testinside Websites' email address, sales@testinside.com. (*See* Appendix at Exhibit 4 (including a recent screen shot of www.pass4side.com/pass4side/contact.htm).)

c)      **"Certinside" Websites**. Upon information and belief, Defendants further operate websites at the following domain names: certinside.com, certinside.org, and certinside.net (the "Certinside Websites").  Like their practice regarding the Pass4side Websites, on testinside.co.uk,

Defendants have identified certinside as part of their family of websites under the category "Important Links." (*See* Appendix at Exhibit 1 (including a recent screen shot of http://testinside.co.uk/, identifying pass4side, certinside and testinside).)  Also, when active, Certinside Websites, such as certinside.com, are virtually identical to their pass4side and testinside counterparts. (*Compare* Appendix at Exhibits 1, 4, & 5; *compare also* www.certinside.com with www.pass4side.com with www.testinside.com.)  Furthermore, acquisitions by outside investigators of "Testinside" products from Testinside.com have revealed that payment for those products was delivered to a Certinside email address, "billing @certinside.com."  *See* Declaration of Brian Hankard ("Hankard Decl.") at ¶ 11.

d)    **"Exam4cert" Websites**. Upon information and belief, Defendants also operate websites at the following domain names: exam4cert.com, exam4cert.biz, exam4cert.org, and exam4cert.net (the "Exam4cert Websites").  As a preliminary matter, on the Exam4cert Websites, Defendants have used language virtually identical to the language on Certinside and Testinside Websites (including typographical errors).  Also, Defendants expressly advertise that Exam4cert is a "partner" of Testinside, and the Exam4cert sites list their support email address as test-inside@hotmail.com and their sales email address as sales@testinside.com.  (*See* Appendix at Exhibit 6 (including screen shots of Exam4cert.com Home pages and FAQ pages).)  Moreover, when

5

outside investigators attempted to purchase a product from Exam4cert.com, they were redirected to Testinside.com to complete the "checkout" process.  See Hankard Decl. at ¶ 13.  Indeed, the actual product sold on the Exam4Cert Websites is *branded* "Testinside."  (*See* Appendix at Exhibit 6 (including screen shot of product sold on exam4cert.com).)

(The Testinside Websites, Pass4side Websites, Certinside Websites, and Exam4cert Websites are referred to, collectively, as "Defendants' Websites," or, where appropriate, "Defendants' Domain Names.")

4.    The only contact data provided by the Defendants that appear to be truthful and accurate are the email addresses Defendants' utilize to operate their illegal business, including:

- test-inside@hotmail.com
- sales@testinside.com
- support@testinside.com
- paypal@testinside.com
- testinside@gmail.com
- braindumps.testinside@gmail.com

And, upon information and belief, also:

- feedback@testinside.com
- itcerthiram@yahoo.com
- billing@testinside.com
- billing@pass4side.com
- billing@certinside.com

The only other legitimate contact information appears to be the address and phone number of, and email address provided by, Protected Domain Services in Denver Colorado, with which the Defendants have contracted to accept correspondence on

Defendants' behalf, while concealing Defendants' identity and location. (*See* Appendix at Exhibit 3 (demonstrating address of Protected Domain Services, per publicly-available WHOIS database).)

5.      Despite purporting to be a business and interacting with the public and consumers on a regular basis through their websites, the Defendants do not provide or disclose any actual physical or mailing addresses at which they may be reached. Even more tellingly, Defendants have misrepresented their actual identity even to their own registrar, in violation of rules promulgated by the Internet Corporation for Assigned Numbers and Names ("ICANN") regarding internet domain name registrations. Moreover, when Microsoft requested that information via email, Defendants did not include any address or mailing information in their email response, and ultimately utilized a WHOIS protection company regarding the domain names identified in Microsoft's letter. The best information available to Microsoft as of the filing of this Complaint is that the John Doe Defendants reside and are domiciled outside the United States, and have contracted with Protected Domain Services to accept correspondence within the United States.

6.      Microsoft is unaware of the true names and capacities of Defendants sued herein as John Does 1-10, inclusive, and therefore sues these defendants by such fictitious names. In fact, as noted above, the Defendants have shrouded themselves in anonymity by registering Defendants' Domain Names with varying and false information. By registering the domain names in this manner, and then implementing a WHOIS protection service, the Defendants have attempted to conceal their actual identities from the public and inhibit any parties they are injuring from fully addressing

the Defendants' misconduct. Microsoft will amend this complaint to allege their true names and capacities when ascertained. Microsoft is informed and believes and therefore alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Microsoft's injuries as herein alleged were proximately caused by such Defendants.

7. The actions alleged herein to have been undertaken by the Defendants were undertaken by each defendant individually, were actions that each defendant caused to occur, were actions that each defendant authorized, controlled, directed, or had the ability to authorize, control or direct, and/or were actions each defendant assisted, participated in, or otherwise encouraged, and are actions for which each defendant is liable. Each defendant aided and abetted the actions of the defendants set forth below, in that each defendant had knowledge of those actions, provided assistance and benefitted from those actions, in whole or in part. Each of the defendants was the agent of each of the remaining defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and with the permission and consent of the other defendants.

8. This Court has subject matter jurisdiction over the claims in this action pursuant to the provisions of 17 U.S.C. § 501, 15 U.S.C. § 1121, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

9. Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) & (d). The infringing materials that are the subject of this litigation were offered for distribution, and were in fact distributed, in this District, and the claims alleged in this action arose in this District. Venue is also proper under 28 U.S.C. § 1400(a).

**General Allegations**

10.    Microsoft is in the business of, among other things, certifying the competency of individuals engaged in various fields of the information technology industry (hereinafter, "Certification Programs").

11.    The purpose of Microsoft's Certification Programs are: (1) to set an industry wide, worldwide recognized standard for basic competency levels in various fields of the information technology industry; (2) to maximize efficiency in recruiting, hiring, training, and promoting employees; (3) to help fill the needs of today's information technology workforce by providing individuals with skills in demand; and (4) to provide industry educators with the standards necessary to prepare individuals to meet the job skills of today.

12.    In order to become certified under any of Microsoft's various Certification Programs, a candidate must pass the required Certification Exam(s).  Each Certification Exam is an original work of authorship fixed in a tangible medium of expression by Microsoft.

13.    Microsoft's Certification Programs include, but are not limited to, the following: (1) Microsoft Certified Technology Specialist (MCTS); (2) Microsoft Certified IT Professional (MCITP); (3) Microsoft Certified Professional Developer (MCPD); (4) Microsoft Certified Architect (MCA) Program; (5) Microsoft Certified Desktop Support Technician (MCDST); (6) Microsoft Certified Learning Consultant (MCLC); (7) Microsoft Certified Systems Administrator (MCSA); (8) Microsoft Certified Systems Engineer (MCSE); (9) Microsoft Certified Database Administrator (MCDBA); (10) Microsoft Certified Trainer (MCT); (11) Microsoft Certified Application Developer (MCAD); (12)

Microsoft Certified Solution Developer (MCSD); (13) Microsoft Certified Business Management Solutions Specialist; (14) Microsoft Certified Business Management Solutions Professional; (15) Microsoft Office Specialist (Office Specialist); (16) Microsoft Certified Application Specialist (MCAS); (17) Microsoft Certified Application Professional (MCAP); and (18) Microsoft Certified Professional (MCP) (collectively, "Certification Programs").

14.    Microsoft protects its Certification Exams by requiring its certified professionals to agree to a Non-Disclosure Agreement.  Students who pass the necessary Certification Exams are eligible to designate themselves accordingly.  Before an individual may use such designation, he or she must agree to the Microsoft Certified Professional Program Agreement ("MCPPA"), which identifies the Certification Exams as Microsoft's trade secrets and prohibits, among other things, unauthorized disclosure or distribution of Certification Exam materials.

15.    Microsoft further acts to protect its Certification Exams by utilizing a secure procedure to register its copyrights in its various Certification Exams.  Microsoft's applications comply with the requirements of the Copyright Act (17 U.S.C. § 101, *et seq.*) and related regulations.

16.    The copyright in each of the exams was registered using the "secure" filing procedure with the United States Copyright Office in compliance with the Copyright Revision Act of 1976 (17 U.S.C. § 101, *et seq.*) and Copyright Office Regulations.  True and correct copies of the certificates of registration for selected Certification Exams confirmed by test purchases to have been infringed by Defendants are included in the Appendix at Exhibits 7 through 9 and incorporated herein by reference.  (*See also*

Appendix at Exhibit 10 (identifying numerous other Copyright Registration Numbers for Microsoft Certification Exams, most of which correspond to other products being sold by Defendants on the Defendants' Websites and, upon information and belief, are also infringing).)

17.    Microsoft has also duly and properly registered a number of trademarks and service marks in the United States Patent and Trademark Office on the Principal Register, including, but not limited to, the following trademark/service marks (collectively, the "marks") relevant to the claims in this litigation:

> a)    "MICROSOFT," Trademark and Service Mark Registration No. 1,200,236 and Renewal for computer programs and computer programming services;
>
> b)    "MICROSOFT," Service Mark Registration No. 1,684,033, for education and training services; namely, conducting classes and seminars in the field of computers and computer programs;

True and correct copies of the certificates of registration for the marks are included in the Appendix at Exhibits 11 & 12, respectively, and are incorporated by reference.

18.    Microsoft further protects its Certification Exams by utilizing technological measures such as password protection and "click through" licenses to effectively control access to the exams, granting access to the exams only to those individuals authorized by Microsoft.  These technological measures effectively protect Microsoft's exclusive right of reproduction and distribution of exams.

**Defendants' Unlawful Acts**

19.    Defendants' operate via at least fifteen (15) websites and utilize numerous fictitious entity names and "DBAs" related to the registration and operation of those

websites, including: (a) "Testinside"; (b) "Testinside Limited"; (c) "Testinside Co., Ltd.";
(d) "pass4side Limited"; (e) "Pass4ide Limited"; (f) "certinside Limited"; and (g)
"Exam4cert."   Despite a diligent search, Microsoft has been unable to locate the
"entities" listed in (a) through (g) in any public database of registered legal entities.

20.    Through Defendants' Websites, Defendants offer for sale so-called
"practice exams" or "study guides" allegedly designed to prepare students to
successfully pass Microsoft Certification Exams.  The Defendants' allow their products
to be purchased on-line and then downloaded to the purchaser's personal computer or
related device.

21.    Microsoft has evidence, is informed and believes, and on that basis
alleges, that the Microsoft Certification Exam practice exams Defendants sell through
Defendants' Websites contain numerous exam questions and answers that are either
identical or substantially similar to Microsoft's copyrighted exam questions and answers.
In fact, the Defendants, at numerous locations on Defendants' Websites, represent that
they are distributing the "real test[s]." (*See, e.g.* Appendix at Exhibit 1 (including screen
shot of http://www.testinside.com/70-549C.html on which is written "TestInside offer [*sic*]
you all the Q&A of the 70-549C real test"); Appendix at Exhibit 1 (including screen shot
of http://www.testinside.org/70-620.html on which is written "TestInside offer [*sic*] you all
the Q&A of the 70-620 real test"); Appendix at Exhibit 4 (including screen shot of
http://www.pass4side.com/70-236.html on which is written "Pass4side offer [*sic*] you all
the Q&A of the 70-236 real test"); Appendix at Exhibit 5 (including screen shot of
http://www.certinside.com/70-290.html on which is written "CertInside offer [*sic*] you all

the Q&A of the 70-290 real test").)  Microsoft has not licensed or authorized Defendants to copy or distribute its copyrighted exam content.

22.    Indeed, Microsoft has conducted several test purchases of the so-called "practice exams" offered for sale on Defendants' Websites, analyzed those materials, and determined that such materials are identical or substantially similar to Microsoft's copyrighted exam questions and answers.  Specifically, outside investigators working for Microsoft arranged several acquisitions from Defendants.  The purchased "training materials" were analyzed and the materials were found to be infringing, including the following examples:

a)    On or about December 4, 2009, an investigator received via direct download, a file entitled "70-431 - Microsoft SQL Server 2005 Implementation & Maintenance," which the investigator had purchased from Defendants via www.testinside.com.    Microsoft examined Defendants' "exam" and determined that the content of it was *identical* to Microsoft's copyrighted questions and answers from its "70-431 - Microsoft SQL Server 2005 Implementation & Maintenance" exam.

b)    On or about December 4, 2009, an investigator received via direct download, a file entitled "70-443 - Designing a Database Server Infrastructure by Using Microsoft SQL Server 2005," which the investigator had purchased from Defendants via www.pass4side.com.  Microsoft examined Defendants' "exam" and determined that the content of it was *identical* to Microsoft's copyrighted questions and answers from its "70-

443 - Designing a Database Server Infrastructure by Using Microsoft SQL Server 2005" exam.

c)    On or about December 4, 2009, an investigator received via direct download a file entitled "70-444 – Optimizing and Maintaining a Database Administration Solution by Using Microsoft SQL Server 2005," which the investigator had purchased from Defendants via www.certinside.com. Microsoft examined Defendants' "exam" and determined that the content of it was *identical* to Microsoft's copyrighted questions and answers from its "70-444 – Optimizing and Maintaining a Database Administration Solution by Using Microsoft SQL Server 2005" exam.

d)    On or about December 8, 2009, an investigator received via direct download a file entitled "70-431 - Microsoft SQL Server 2005 Implementation & Maintenance," which the investigator had purchased from Defendants via www.testinside.co.uk. Microsoft examined Defendants' "exam" and determined that the content of it was *identical* to Microsoft's copyrighted questions and answers from its "70-431 - Microsoft SQL Server 2005 Implementation & Maintenance" exam.

e)    On December 9, 2009, an investigator visited one of Defendants' Websites, www.exam4cert.com and attempted to purchase a product offered by the Defendants on that site, identified as "70-444 – Optimizing and Maintaining a Database Administration Solution by Using Microsoft SQL Server 2005."  When the exam was located on the site, there was a link to make the purchase. However, when the investigator clicked on the

link, the investigator was redirected to testinside.com for the purchase. The investigator did not re-purchase the exam from testinside.com, but did confirm the connection between testinside.com and exam4cert.com.

f)      On or about December 21, 2009, an investigator received via direct download a file entitled "70-444 – Optimizing and Maintaining a Database Administration Solution by Using Microsoft SQL Server 2005," which the investigator had purchased from Defendants via www.testinside.com. Microsoft examined Defendants' "exam" and determined that the content of it was *identical* to Microsoft's copyrighted questions and answers from its "70-444 – Optimizing and Maintaining a Database Administration Solution by Using Microsoft SQL Server 2005" exam.

(*See generally* Hankard Decl.)

23.     Obviously Defendants' customers who purchase Microsoft exam questions and answers from Defendants' Websites are not required to pass through any of the technological measures that Microsoft uses to control access to and protect its rights in the exams.  Indeed, rather than being provided access to this information in a controlled and secure testing environment, the Defendants allow their customers to download these materials to their personal computers, within the privacy and freedom of their own homes, and with no ability to restrict the future copying or use of those materials.

24.     Defendants and their service providers have repeatedly been put on notice regarding their misconduct.  Despite such notice, the Defendants have continued to sell the infringing materials through Defendants' Websites.  For example, Defendants

ignored numerous demand letters sent to Defendants and their service providers until Defendants received a letter indicating that it was "**at least the fourth (4th) correspondence directed to you related to the Unauthorized Use of Copyrighted Material on the Testinside Websites**" (emphasis in original), at which point Defendants decided to engage in more elusive misconduct. Specifically, Defendants purported to remove all infringing material from the Testinside Websites and apologized to Microsoft for their wrongdoing, as follows:

> hello,
>   we received a letter from your company .our softwar engineers have dealt with our website on the first time.we are very sorry about that we have make a lot of trouble to your company.
>   At the same time,  thanks for pointing out our's problem .we admire your company's strict and effective working style.we hope deeply that we can cooperate with your company in the future.
>   we deleted all materials about Certified Microsoft-related on our website.I'm so sorry for you and your company.if there are still some mistakes on our website.please tell me as soon as possible.
>   thanks for your letter again.
> 2009-09-15
> sales
> [sales@testinside.com]

25.    Despite that assurance, Microsoft subsequently confirmed that Defendants *immediately*: (a) continued to offer, distribute and sell infringing "Microsoft" materials via Testinside.co.uk in various jurisdictions, including *within the United States*, (b) posted a link to "contact [Testinside] customer service" where Microsoft material was previously located, and, via that link, they directed customers interested in infringing material to Defendants' other websites, such as the Pass4side Websites; and (c) provided a "secret link" on the Testinside Websites to PDF "samples" of Microsoft's

Certification Exams, allowing users to download pirated copies of large portions of those exams for free.

26.    Apparently, those evasive maneuvers were too burdensome for Defendants, because Defendants are once again *directly* selling unauthorized Microsoft materials via all of the Testinside Websites, and continue to sell such materials via Defendants' Websites.

27.    Based on the facts alleged herein, Defendants have committed, and are committing, flagrant acts of copyright infringement.   These acts of infringement are willful, deliberate and committed with knowledge of Microsoft's registered copyrighted material.

**COUNT I – <u>Copyright Infringement</u>**

28.    Plaintiff re-alleges and reincorporates herein by reference the allegations set forth in Paragraphs 1 through 27 above as though fully set forth herein.

29.    Microsoft is the author, creator and owner of the right, title and interest in various copyrighted Certification Exams registered with the United States Copyright Office, including all of those at issue in this case.

30.    The Defendants willfully infringed Microsoft's copyrights by copying and distributing, without authorization or approval, Microsoft's Certification Exams and/or making other infringing use of the Certification Exams in the United States of America. A finding of willfulness is supported by the evidence, as well as the presumption afforded by 17 U.S.C. § 504, inasmuch as Defendants knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority in registering,

maintaining, or renewing Defendants' Domain Names in connection with the infringement of copyrighted materials.

31.    As a result of the foregoing activities, Defendants are liable to Microsoft for willful infringement under 17 U.S.C. § 501, et seq.

32.    Microsoft has suffered, and will continue to suffer, substantial and irreparable damage to its business reputation and goodwill, as well as monetary losses in an amount not yet fully ascertained.  In addition to Microsoft's actual damages, Microsoft is entitled, pursuant to 17 U.S.C. § 504, to receive the profits made by Defendants from their wrongful acts.  In the alternative, Microsoft is entitled to statutory damages pursuant to 17 U.S.C. § 504(c).  These statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2) due to Defendants' willful conduct.

33.    Microsoft has no adequate remedy at law for Defendants' wrongful conduct in that:  (1) Microsoft's copyrights are unique and valuable property that have no readily determinable market value; (2) the infringement by Defendants constitutes interference with Microsoft's goodwill and customer relations; and (3) Defendants' wrongful conduct and the damage resulting therefrom is continuing.  Therefore, Microsoft is entitled to injunctive relief pursuant to 17 U.S.C. § 502 and to an Order under 17 U.S.C. § 503 that any infringing materials should be impounded and destroyed.  In furtherance of such relief, the Court should Order, among other things, that Defendants' Domain Names be impounded or otherwise restricted from any and all transfers pending the resolution of this litigation.

34.    Microsoft is also entitled to recover its attorney's fees and costs pursuant to 17 U.S.C. § 505.

**COUNT II – Trademark Infringement, 15 U.S.C. § 1114, *et seq.***

35.     Microsoft repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 34, inclusive.

36.     Defendants' activities constitute infringement of Microsoft's federally registered marks in violation of the Lanham Act, including, but not limited to, 15 U.S.C. § 1114(1).

37.     Because Microsoft advertises and markets its Certification Programs under, among others, the Microsoft® marks described in this Complaint, these marks are the means by which Microsoft's Certification Programs are distinguished from the exams, programs, products and services of others in the same field or related fields.

38.     Because of Microsoft's long, continuous, and exclusive use of these marks, they have come to mean, and are understood by customers, end users, and the public to signify products or services of Microsoft.

39.     Defendants' wrongful conduct includes the distribution of purported "Microsoft" materials without the authorization of Microsoft.  These materials that Defendants have and are continuing to offer, advertise, market, sell and/or distribute are likely to cause confusion, mistake, or deception as to their source, origin, or authenticity.

40.     Defendants' activities are likely to lead the public to conclude, incorrectly, that the "Microsoft" materials that Defendants are using, advertising, installing, marketing, offering, or distributing originate with or are authorized by Microsoft, to the damage and harm of Microsoft, its licensees, and the public.

41.     Defendants have offered, advertised, used, marketed, installed, or distributed material that infringes Microsoft's registered marks with the willful and

calculated purposes of (a) misleading, deceiving, or confusing customers and the public as to the origin and authenticity of the infringing materials, and (b) trading upon Microsoft's business reputation and goodwill.  At a minimum, Defendants acted with willful blindness to and in reckless disregard of Microsoft's registered marks.

42.     As a result of their wrongful conduct, Defendants are liable to Microsoft for trademark infringement.  Microsoft has suffered, and will continue to suffer, substantial losses, including, but not limited to, damage to its business reputation and goodwill. Microsoft is entitled to recover damages, which include its losses and all profits Defendants have made as a result of their wrongful conduct, pursuant to 15 U.S.C. § 1117(a).

43.     Alternatively, Microsoft is entitled to statutory damages pursuant to 15 U.S.C. § 1117(c).   In addition, because Defendants' infringement of Microsoft's trademark rights was willful, within the meaning of the Lanham Trademark Act, the award of damages and profits should be trebled pursuant to 15 U.S.C. § 1117(b).

44.     Microsoft is also entitled to recover its attorney's fees and costs of suit pursuant to 15 U.S.C. § 1117.

45.     Pursuant to 15 U.S.C. §§ 1116 and 1118 and/or other applicable law, Microsoft is further entitled to injunctive relief enjoining Defendants' wrongful conduct, an order impounding all counterfeit and/or infringing articles, and an order freezing the electronic and other banking accounts utilized by Defendants to profit from and further invest in their unlawful counterfeiting and trafficking of infringing materials, and which are in fact being held in constructive trust for Microsoft, at least until such time as a

hearing can be held and Microsoft's rights to relief (including an accounting) can be adjudicated.

**COUNT III – <u>False Designation of Origin, 15 U.S.C. § 1125, *et seq.*</u>**

46.    Microsoft repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 45, inclusive.

47.    Because Microsoft advertises and markets its Certification Exams and Programs under the marks described in this Complaint, these marks are the means by which Microsoft's exams and programs are distinguished from the exams and programs of others in the same field or related fields.

48.    Because of Microsoft's long, continuous, and exclusive use of these marks, they have come to mean, and are understood by customers, end users, and the public to signify products or services of Microsoft.

49.    Defendants' wrongful conduct – including, but not limited to, reverse passing off Microsoft's actual certification exams as if they were "study guides" or exam preparation material deriving from Defendants – is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association between Microsoft and Defendants, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Microsoft, in violation of the Lanham Act.

50.    Defendants' wrongful conduct – including, but not limited to, offering, advertising, marketing, and distributing Microsoft's actual certification exams as if they were "study guides" or exam preparation material deriving from Defendants – constitutes misrepresenting the nature, characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial activities, in violation of the Lanham Act.

51.    Defendants engaged in wrongful conduct in violation of the Lanham Act with the willful purpose of (a) misleading, deceiving, or confusing customers and the public as to the origin and authenticity of the goods and services offered, marketed or distributed in connection with Microsoft's marks, name, products, and services, and (b) trading upon Microsoft's business reputation and goodwill.

52.    Defendants' conduct constitutes (a) false designation of origin and/or (b) false or misleading description, in violation of § 43(a) of the Lanham Trademark Act, set forth at 15 U.S.C. § 1125(a).

53.    Defendants' wrongful conduct is likely to continue unless restrained and enjoined.

54.    As a result of Defendants' wrongful conduct, Microsoft has suffered and will continue to suffer substantial losses, including, but not limited to, damage to its business reputation and goodwill.

55.    Microsoft is also entitled to recover its attorney's fees and costs of suit pursuant to 15 U.S.C. § 1117.

56.    Microsoft is further entitled to injunctive relief enjoining Defendants' wrongful conduct pursuant to 15 U.S.C. § 1125(c), an order impounding and/or destroying all infringing items pursuant to 15 U.S.C. §§ 1125(c), and an order freezing the electronic and other banking accounts utilized by Defendants to profit from and further invest in their unlawful counterfeiting and trafficking of infringing materials, and which are in fact being held in constructive trust for Microsoft, at least until such time as a hearing can be held and Microsoft's rights to relief (including an accounting) can be adjudicated.

**COUNT IV – <u>Constructive Trust Upon Illegal Profits</u>**

57.    Microsoft repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 56, inclusive.

58.    Defendants' acts and conduct constitute deceptive, fraudulent, and wrongful conduct in the nature of, among other things, passing off the infringing "training materials" as approved or authorized by Microsoft.

59.    By virtue of Defendants' wrongful acts and conduct, Defendants have illegally received money and profits that rightfully belong to Microsoft.

60.    Microsoft is entitled pursuant to 17 U.S.C. § 504(b) and 15 U.S.C. § 1117(a) to recover all profits of Defendants that are attributable to their acts of infringement or violations thereof.

61.    Upon information and belief, Defendants hold the illegally received money and profits in the form of bank accounts, real property, and personal property (including motor vehicles) that can be located and traced.

62.    Defendants hold the money and profits they have illegally received as constructive trustee for the benefit of Microsoft.

**COUNT V - <u>Accounting</u>**

63.    Microsoft repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 62, inclusive.

64.    Microsoft is entitled, pursuant to 17 U.S.C. § 504(b) and 15 U.S.C. § 1117(a), to recover all profits of Defendants that are attributable to their acts of infringement or violations thereof.

65.    The amount of money due from Defendants to Microsoft is unknown to Microsoft and cannot be ascertained without a detailed accounting by Defendants of the precise number of units of infringing material offered for distribution and distributed by Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Microsoft respectfully requests judgment as follows:

1.      That the Court enter judgment against Defendants that they have willfully infringed Microsoft's rights to the copyrighted Certification Exams identified in Appendix at Exhibits 7 through 9  under 17 U.S.C. § 501, et seq.;

2.      That the Court enter judgment against Defendants that they have willfully violated the Lanham Act, and infringed Microsoft's registered marks, in violation of 15 U.S.C. §§ 1114 and 1125;

3.      That the Court issue temporary, preliminary, and permanent injunctive relief against the Defendants and that Defendants, their officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants be enjoined and restrained from:

(a)      Imitating, copying or making any other infringing use or infringing distribution of any Microsoft Certification Exams or variations thereof;

(b)      Using reproductions, counterfeits, copies, or colorable imitations of Microsoft's copyrighted Certification Exams or variations thereof, and the distribution, offering for distribution, circulation, sale, offering for sale, advertising, importing, promoting or displaying of spurious products or merchandise not authorized or licensed by Microsoft;

(c)      Utilizing or maintaining any website to store material that infringes on Microsoft's Certification Exams;

(d)      Providing in any medium whatsoever Microsoft's Certification Exams without express authorization from Microsoft; and

(e)    Assisting, aiding or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (a) through (d) above.

4.    That the Court enter an Order of impoundment and destruction pursuant to 17 U.S.C. § 503, 15 U.S.C. § 1116, and 28 U.S.C. § 1651(a), impounding all infringing copies of Microsoft Certification Exams, and any related item, including business records which are in Defendants' possession and under their control;

5.    That the Court enter an Order pursuant to 17 U.S.C. § 503, 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), and/or other appropriate authority, requiring that Defendants' Domain Names – testinside.com, testinside.org, testinside.us, testinside.net, testinside.co.uk, testinside.ws, pass4side.com, pass4side.net, certinside.com, certinside.org, certinside.net, exam4cert.com, exam4cert.biz, exam4cert.net, and exam4cert.org – be restricted from transfer, impounded, and transferred to Microsoft;

6.    That the Court enter an Order declaring that Defendants hold in trust, as constructive trustees for the benefit of Microsoft, their illegal profits gained from the distribution of infringing copies of Microsoft Certification Exams, and requiring Defendants to provide Microsoft with a full and complete accounting of all amounts due and owing to Microsoft as a result of Defendants' infringing activities;

7.    That the Court enter an Order instructing Defendants, jointly and severally, to pay Microsoft's general, special, actual and statutory damages as follows;

(a)    Microsoft's damages and Defendants' profits pursuant to 17 U.S.C. § 504(b); or, in the alternative, enhanced statutory damages pursuant to

17 U.S.C. § 504(c)(2) for Defendants' willful infringement of Microsoft's copyrights; and

(b)    Microsoft's damages and Defendants' profits pursuant to 15 U.S.C. § 1117(a), trebled pursuant to 15 U.S.C. § 1117(b) for Defendants' willful violation of Microsoft's registered marks, or alternatively, enhanced statutory damages pursuant to 15 U.S.C. § 1117(c) for Defendants' willful circulation of Microsoft's marks;

8.    That the Court Order Defendants to pay Microsoft both the cost of this action and reasonable attorneys' fees incurred by Microsoft in prosecuting this action; and

9.    That the Court grant Microsoft such additional relief as is just and proper.


Dated this ___ day of February, 2010.


THE PLAINTIFF
MICROSOFT CORPORATION


By: _____/s/_____

    Brian C. Roche (ct17975)
    Gerald C. Pia, Jr. (ct21296)
    Roche Pia, LLC
    Two Corporate Drive, Suite 248
    Shelton, CT 06484
    Phone: (203) 944-0235
    Fax: (203) 567-8033
    E-mail: broche@rochepia.com
           gpia@rochepia.com